KSC/03.04.21



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | | |
|---|---|---|---|
| *Samika N. Boyd*<br>*Assistant United States Attorney*<br>*Samika.Boyd@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4878*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-3124* |

March 4, 2021

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

2:32 pm, Mar 31 2021
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DG _____ Deputy

**Via E-Mail**

Andrew I. Alperstein, Esq.
aia@alpersteinlaw.com
Alperstein & Diener, P.A.
201 North Charles Street, Suite 2000
Baltimore, Maryland 21201

> Re:  Plea Agreement in the Case of
> *United States v. Russell Stanley III*
> Criminal No.  PX-20-0073

Dear Mr. Alperstein:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Russell Stanley III (hereinafter the "defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the defendant accepts this offer, please have the defendant execute it in the spaces provided below.  If this offer has not been accepted by March 17, 2021, it will be deemed withdrawn.  The terms of the Agreement are as follows:

## Offenses of Conviction

1.    The defendant agrees to plead guilty to Counts One, Three, and Four of the First Superseding Indictment.  Count One charges the defendant with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846.  Count Three charges the defendant charges the defendant with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371.  Count Four charges the defendant with bribery, in violation of 18 U.S.C. § 201(b)(1).  The defendant admits that the defendant is, in fact, guilty of the offenses and will so advise the Court.

## Elements of the Offense

2.    The elements of the offenses to which the defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

*United States v. Russell Stanley III*
Criminal No.  PX-20-0073

### Count One

a.  In or about April 2018, and continuing through in or about October 2019, in the District of Maryland, the defendant knowingly, intentionally, and willfully agreed with one or more persons to distribute and possess with the intent to distribute 500 grams or more of cocaine; and
    5 Kilograms

b.  The defendant knowingly and voluntarily entered into that agreement, not by accident or mistake

### Count Three

a.  In or about April 2018, and continuing through in or about October 2019, the defendant with one or more persons entered into an unlawful agreement to commit acts of bribery in violation of 18 U.S.C. § 201(b)(1), by offering, promising, and giving something of value with the corrupt intent to influence a public official in the performance of an official act as a public official, namely a United States Postal Service ("USPS") letter carrier, influence such public official to commit a fraud on the United States, or induce such public official to commit an act in violation of the lawful duty of such public official;

b.  The defendant knowingly and willfully became a member of the conspiracy;

c.  One of the members of the conspiracy knowingly committed at least one of the overt acts charged in the First Superseding Indictment; and

d.  At least one of the overt acts charged in the First Superseding Indictment was committed to further some objective of the conspiracy.

### Count Four

a.  On or about October 13, 2018, the defendant offered, promised, and gave money to Zakiyya Holloman;

b.  During that time period, Zakiyya Holloman was a public official by virtue of her being a USPS letter carrier; and

c.  The defendant did so with corrupt intent to influence Zakiyya Holloman in the performance of an official act, to influence her to commit a fraud on the United States, or to induce her to commit an act in violation of her lawful duties.

### Penalties

3       The maximum penalties provided by statute for the offenses to which the defendant is pleading guilty are as follows:

*United States v. Russell Stanley III*
Criminal No. PX 20-0073

2

| Count | Statute | Maximum Term of Imprisonment | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 1 | 21 U.S.C. § 846 | Life (minimum of 10 years) | Life (minimum 5 years of supervised release) | $10 million | $100 |
| 3 | 18 U.S.C. § 371 | 5 years | 3 years | $250,000 | $100 |
| 4 | 18 U.S.C. § 201(b)(1) | 15 years | 3 years | 3 times the monetary equivalent of the thing of value or $250,000, whichever is greater | $100 |

a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served by the defendant.

b.      Supervised Release: If the Court orders a term of supervised release, and the defendant violates the conditions of supervised release, the Court may order the defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution: The Court may order the defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The defendant may be required to pay interest if the defendant does not pay the fine when it is due.

e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the defendant

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

agrees to disclose all assets in which the defendant has any interest or over which the defendant exercises direct or indirect control. Until the money judgment is satisfied, the defendant authorizes this Office to obtain a credit report in order to evaluate the defendant's ability to pay, and to request and review the defendant's federal and state income tax returns. The defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The defendant understands that by entering into this Agreement, the defendant surrenders certain rights as outlined below:

a.      If the defendant had pled not guilty and persisted in that plea, the defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the defendant, this Office, and the Court all agreed.

b.      If the defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the defendant could be found guilty of any count. The jury would be instructed that the defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the defendant went to trial, the Government would have the burden of proving the defendant guilty beyond a reasonable doubt. The defendant would have the right to confront and cross-examine the Government's witnesses. The defendant would not have to present any defense witnesses or evidence whatsoever. If the defendant wanted to call witnesses in defense, however, the defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The defendant would have the right to testify in the defendant's own defense if the defendant so chose, and the defendant would have the right to refuse to testify. If the defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the defendant's decision not to testify.

e.      If the defendant were found guilty after a trial, the defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

4

appeal the sentence. By pleading guilty, the defendant understands that the defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the defendant makes during such a hearing would not be admissible against the defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the defendant's plea of guilty, the defendant will be giving up the right to file and have the Court rule on pre-trial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the defendant guilty.

h.      By pleading guilty, the defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The defendant recognizes that if the defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any potential immigration consequences.

<h3 align="center">Advisory Sentencing Guidelines Apply</h3>

5.      The defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<h3 align="center">Factual and Advisory Guidelines Stipulation</h3>

6.      This Office and the defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

7.      This Office and the defendant further agree to the following applicable sentencing guideline factors:

a.      Pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(4), **the base offense level is a level 32 for Count One** to account for at least 42 kilograms of cocaine. There is a **two**-level increase in the defendant's offense level, because the defendant was a leader of the criminal activity. See U.S.S.G. § 3B1.1(c). Thus, **the defendant's adjusted offense level for Count One is a level 34.**

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

5

b.          Pursuant to U.S.S.G. §§ 2C1.1(a)(2) and 2X1.1(a), **the base offense level is 12 for Count Three**. There is a **two**-level increase, because the offense involved the acceptance of more than one bribery. See U.S.S.G. § 2C1.1(b)(1). Therefore, **the defendant's adjusted offense level for Count Three is a level 14.**

c.          Pursuant to U.S.S.G. § 2C1.1(a)(2), **the base offense level is 12 for Count Four**.

d.          Pursuant to U.S.S.G. § 3D1.2(b), Counts One, Three, and Four are grouped together in a single Group. As a result, **the offense level applicable to the Group is a level 34**. U.S.S.G. § 3D1.3(a).

e.          This Office does not oppose a **2**-level reduction in the defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the defendant's timely notification of the defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

**Accordingly, the final offense level is a level 31.**

8.          There is no agreement as to the defendant's criminal history and the defendant understands that the defendant's criminal history could alter the defendant's offense level. Specifically, the defendant understands that the defendant's criminal history could alter the final offense level if the defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income.

9.          Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures, or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11(c)(1)(C) Plea

10.          Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties stipulate and agree that a sentence of **132 months** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). The

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects the Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the defendant so elect, the defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that, if the Court finds that the defendant engaged in obstructive or unlawful behavior after signing the plea agreement and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in the Agreement, and the defendant will not be able to withdraw his plea.

## Obligations of the Parties

11.     At the time of sentencing, the parties will request that the Court sentence the defendant to a total term of imprisonment of **132 months**, including a sentence of 132 months of imprisonment on Count 1, a sentence of 60 months imprisonment on Count 3, and a sentence of 60 months of imprisonment on Count 4, all three sentences to run concurrently to each other. After the Court imposes the sentences, this Office will move to dismiss the open count of the First Superseding Indictment pending against the defendant in this case.

12.     At the time of sentencing, this Office and the defendant reserve the right to advocate for a reasonable period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

13.     This Office and the defendant also reserve the right to bring to the Court's attention all information with respect to the defendant's background, character, and conduct that this Office or the defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the First Superseding Indictment.

## Public Benefits in Drug Cases

14.     The defendant understands and acknowledges that under 21 U.S.C. §§ 862 and 862a, a person who has been convicted of a federal offense involving the distribution or possession of controlled substances may be denied certain federal and state benefits such as loans, grants, or food stamps.

## Waiver of Appeal

15.     In exchange for the concessions made by this Office and the defendant in the Agreement, this Office and the defendant waive their rights to appeal as follows:

> a.     The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the defendant's conviction on the ground that the statutes to which

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

7

the defendant is pleading guilty are unconstitutional, to the extent such a challenge can be legally waived, or on the ground that the admitted conduct does not fall within the scope of the statutes to the extent that such challenge can be legally waived.

b.     The defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal the imposed sentence (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i.   The defendant reserves the right to appeal the sentences if the total term of imprisonment imposed is more than 132 months of imprisonment; and

ii.  The Government reserves the right to appeal the sentences if the total term of imprisonment imposed is less than 132 months of imprisonment.

c.     The defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

16.     The defendant understands that the Court may enter an Order of Forfeiture as part of the defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

17.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the defendant agrees to forfeit to the United States all of the defendant's right, title, and interest in the following items that the defendant agrees constitute money, property, and/or assets derived from or obtained by the defendant as a result of the defendant's illegal activities: **$3,000.00 in U.S. currency in the form of a money judgment,** which represents the sum of the United States currency that the defendant paid as a result of Counts Three and Four of the First Superseding Indictment.

18.     The defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J),

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

19. The defendant agrees to assist fully in the forfeiture of the above property. The defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

20. The defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

<u>The Defendant's Conduct Prior to Sentencing and Breach</u>

21. Between now and the date of the sentencing, the defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

22. If the defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the defendant all statements made by the defendant and any of the information or materials provided by the defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the defendant to withdraw the guilty plea. The defendant acknowledges that the defendant may not withdraw the defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

23.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the defendant will receive. The defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

24.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the defendant. There are no other agreements, promises, undertakings, or understandings between the defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the defendant fully accepts each and every term and condition of this Agreement, please have the defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan Lenzner
Acting United States Attorney

By:     Samika Boyd

Samika N. Boyd
Jason D. Medinger
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-17-21
Date

Russell Stanley III
The defendant

*United States v. Russell Stanley III*
Criminal No.  PX-20-0073

10

I am the defendant's counsel. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the defendant. The defendant advises me that the defendant understands and accepts its terms. To my knowledge, the defendant's decision to enter into this Agreement is an informed and voluntary one.

Date

Andrew I. Alperstein, Esq.
The defendant's counsel

*United States v. Russell Stanley III*
Criminal No.  PX-20-0073

11

## Attachment A:  Statement of Facts

*The undersigned parties stipulate and agree that, if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt.  The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In August 2018, the United States Postal Inspection Service and the Drug Enforcement Administration began jointly investigating the importation of large cocaine quantities into Maryland.  Unknown persons were sending United States Priority Mail parcels with the same suspicious characteristics common to those packages to New York, Florida, and Maryland.  Among those characteristics included: (1) Puerto Rico was the place the packages entered the mail stream; (2) the addresses were written in heavy black magic marker; and (3) there was no association between the senders' and recipients' names and their listed addresses.

Postal Inspectors intercepted two United States Priority Mail parcels destined for New York (hereinafter referred to as individually as "New York Package 1" and "New York Package 2") and one United States Priority Mail parcel destined for Florida (hereinafter referred to as "Florida Package") on separate occasions pursuant to federal search and seizure warrants, and each parcel contained 2 kilograms of cocaine.  Notably, the 2 kilograms of cocaine seized from New York Package 2 were inside of tupperware, and among the other items in New York Package 2 were edible peanuts, blue-and-white drinking straws, and styrofoam plates and cups.

Based on physical and video surveillance in connection with United States Priority Mail parcels destined for Bowie, Maryland, and Upper Marlboro, Maryland, as well as other law enforcement tools, investigators identified the defendant Russell Stanley III ("defendant"), who was the leader of the drug trafficking organization (hereinafter "Stanley DTO").  The defendant agrees that he conspired with others to distribute and possess with intent to distribute cocaine in the District of Maryland.  The defendant further agrees that the quantity of cocaine in the conspiracy attributable to the defendant as a result of his own conduct is at least 40 kilograms of cocaine. The defendant had others assisting him with facilitating his distribution of cocaine in the District of Maryland.

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

Investigators also identified the co-defendant Delonte Andre Gomez a/k/a Turk ("co-defendant Gomez"). The co-defendant Gomez was among the individuals whom the defendant supplied with cocaine that the defendant received in the United States Priority Mail parcels.

Investigators further identified Stanley DTO members, namely the co-defendant Barrington Albert Edwards, Jr. ("co-defendant Edwards") and the co-defendant Jovan Kirk Louis Savage ("co-defendant Savage"). Specifically, the co-defendant Edwards recruited United States Postal Service ("USPS") letter carriers to divert United States Priority Mail parcels containing kilogram quantities of cocaine to the Stanley DTO, served as a liaison between the defendant and those USPS letter carriers, coordinated the USPS letter carriers delivery of the cocaine parcels, and provided the defendant with addresses as destinations for those parcels that the Stanley DTO picked up. Conversely, the co-defendant Savage picked up United States Priority Mail parcels containing kilogram quantities of cocaine and assisted with delivering proceeds of the same to pay off the defendant's drug debt. In exchange for the co-defendant Savage picking up the cocaine parcels, the defendant paid the co-defendant Savage $500.00 per parcel.

Investigators also identified the co-defendant Zakiyya Holloman ("co-defendant Holloman") and the co-defendant Maurice Vaughn ("co-defendant Vaughn"). Both the co-defendant Holloman—who was assigned to the Postal Rural Route 022, servicing Bowie, Maryland, from April 2017 to October 2019—and the co-defendant Vaughn—who was assigned to the Postal City Route 022, servicing Bowie, Maryland, from July 2018 to October 2019—were USPS letter carriers who diverted United States Priority Mail parcels containing cocaine to the defendant or the Stanley DTO in exchange for money.

As USPS letter carriers, the co-defendant Vaughn and the co-defendant Holloman were public officials as defined in 18 U.S.C. § 201(a)(1). As part of their official duties, they had certain responsibilities. Among them were (1) delivering each package sent via USPS along their assigned postal routes to the addressee at the proper address; (2) keeping accurate records of their deliveries, including scanning a parcel that required tracking as delivered at the proper time and location if in fact the co-defendant Vaughn and the co-defendant Holloman properly delivered it to the addressee at the proper address; and (3) returning a parcel to the post office so that the post office could return it to the sender if the parcel's delivery

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

address was a vacant address or the listed recipient had no association with the delivery address.

In or about April 2018, a mutual acquaintance of the defendant and the co-defendant Holloman introduced the defendant to the co-defendant Holloman. Shortly after that introduction, the defendant inquired about the co-defendant Holloman's assigned postal route, including whether there were any vacant houses on it. About three weeks later, the defendant began receiving United States Priority Mail parcels containing kilogram quantities of cocaine on the co-defendant Holloman's assigned postal route.

The co-defendant Holloman agreed to divert—and diverted on at least six occasions—United States Priority Mail parcels containing kilogram quantities of cocaine to the defendant. For instance, the co-defendant Holloman handed the defendant a United States Priority Mail parcel on October 13, 2018, and November 13, 2018. Similarly, the defendant retrieved a United States Priority Mail parcel from the driver side of the co-defendant Holloman's postal vehicle and placed it in his vehicle on October 20, 2018. To coordinate the defendant's receipt of cocaine parcels, the defendant texted the co-defendant Holloman when the defendant was ready to receive them. In exchange for the co-defendant Holloman diverting each of those parcels to the defendant, the co-defendant Holloman received $500.00 in United States currency from the defendant. In total, the defendant paid at least $3,000.00 in United States currency as a result of his offenses. To conceal the scheme, the co-defendant Holloman would scan United States Priority Mail parcels as delivered to the addressees, although the co-defendant Holloman delivered those parcels to the defendant.

In or about December 2018, the co-defendant Edwards asked the co-defendant Vaughn to divert United States Priority Mail parcels to the STANLEY DTO. Shortly after, the co-defendant Vaughn agreed to do so. To coordinate the STANLEY DTO's receipt of those parcels, the co-defendant Edwards texted the co-defendant Vaughn to deliver the United States Priority Mail parcels to particular locations for pick up by the STANLEY DTO. The co-defendant Vaughn communicated directly with the co-defendant Edwards about the United States Priority Mail parcels containing cocaine. And the co-defendant Edwards relayed information regarding those parcels from the co-defendant Vaughn to the defendant and from the defendant to the co-defendant Vaughn.

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

3

At least once a month during the period of December 2018 and October 2019, the co-defendant Vaughn diverted a United States Priority Mail parcel containing 2 kilograms of cocaine to the STANLEY DTO. For example, on February 14, 2019, the defendant and the co-defendant Edwards discussed a United States Priority Mail parcel containing 2 kilograms of cocaine destined for a Bowie address on the co-defendant Vaughn's assigned postal route (hereinafter the "Bowie Package"). The co-defendant Edwards asked about the expected date on which the Bowie Package should be among the mail that the co-defendant Vaughn would deliver along the co-defendant Vaughn's assigned postal route: "Let me know how we looking." And the defendant agreed to do so: "I will." The defendant shortly after provided the expected date and directed the co-defendant Edwards to relay to the co-defendant Vaughn to be on the lookout for the Bowie Package: "It look like tomorrow but tell him keep eyes open if he see the play." The next day, the defendant confirmed the Bowie Package should among the mail that the co-defendant Vaughn would deliver along the co-defendant Vaughn's assigned postal route that day: "We all good . . . ."

Indeed, on that day, the co-defendant Vaughn placed the Bowie Package in the defendant's vehicle, although the co-defendant Vaughn scanned the Bowie Package as delivered to the addressee. About seven minutes later, the Bowie Package exited the passenger side window of the defendant's vehicle, and investigators recovered the parcel box and some of its contents. In particular, the Bowie Package contained the same contents as New York Package 2—such as edible peanuts, blue-and-white drinking straws, and styrofoam plates and cups—except 2 kilograms of cocaine inside of tupperware. After the co-defendant Vaughn placed the Bowie Package into the passenger side of the defendant's vehicle, the co-defendant Edwards paid the co-defendant Vaughn $200.00 in United States currency through Cash App for diverting the Bowie Package to the defendant.

Similarly, the co-defendant Vaughn delivered United States Priority Mail parcels containing 2 kilograms of cocaine each to particular locations for pick up by the STANLEY DTO on August 29, 2019, and October 2, 2019. The addresses on both of those cocaine parcels were provided to the defendant by the co-defendant Edwards on August 13, 2019, and September 19, 2019, respectively. The co-defendant Savage picked up each United States Priority Mail parcel containing 2 kilograms of cocaine from a particular location to which the co-defendant Vaughn delivered it for the pick up by the STANLEY DTO on August 29, 2019, and October 2, 2019, and conducted counter-surveillance to make sure that law enforcement was not in the area. In exchange for diverting each of those cocaine parcels to the

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

4

STANLEY DTO, the co-defendant Vaughn received at least $200.00 in United States currency in cash or electronically from the co-defendant Edwards or an individual on the co-defendant Edwards' behalf. To conceal the scheme, the co-defendant Vaughn would scan United States Priority Mail parcels as delivered to the addressees, although the co-defendant Vaughn delivered those parcels to the STANLEY DTO or particular locations for pick up by the STANLEY DTO.

Cash payments were not the sole means by which the defendant and the co-defendant Edwards kept the USPS letter carriers in the fold and from telling law enforcement about the Stanley DTO drug trafficking activities. The defendant and the co-defendant Edwards required the USPS letter carriers to provide them with their home addresses. In response to the co-defendant Edwards stating that he knows USPS letter carriers' home addresses and the location of their children's daycares, the defendant indicated that it was important for the USPS letter carriers to know that the defendant and the co-defendant Edwards knew that information: "But they need to know we know[.]" The co-defendant Edwards expressed his agreement: "Indeed [.] Totally agree [.] I'm on same page."

In October 2019, Postal Inspectors intercepted a United States Priority Mail parcel destined for an Upper Marlboro address that contained the same contents as New York Package 2, including, but not limited to, edible peanuts, blue-and-white drinking straws, styrofoam plates and cups, and 2 kilograms of cocaine inside of tupperware (hereinafter referred to as "Upper Marlboro Package"). The edible peanuts, blue-and-white drinking straws, and styrofoam plates and cups in the Upper Marlboro Package were like the contents of the Bowie Package.

Additionally, on October 9, 2019, the defendant and the co-defendant Savage worked together to pick up the Upper Marlboro Package. They conducted counter-surveillance to make sure that law enforcement was not in the area. However, unbeknownst to them, investigators had already executed a federal search and seizure warrant and seized the 2 kilograms of cocaine from the Upper Marlboro Package. After detecting the presence of law enforcement, who were conducting surveillance of the Upper Marlboro Package's delivery, the defendant fled that area in the defendant's vehicle. In addition, the co-defendant Savage attempted to leave the area in the co-defendant Savage's vehicle, but law enforcement arrested him. Neither the co-defendant Savage nor the defendant picked up the Upper Marlboro Package.

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

Later on the same day, investigators conducted a search of the shared residence of the defendant, the co-defendant Gomez, and the co-defendant Savage pursuant to a federal search and seizure warrant. Among the items that investigators found and seized were approximately 15 grams of cocaine in a clear baggie and two digital scales from a kitchen cabinet as well as a money counter from a second floor bedroom.

On the same day, investigators seized $3,196.00 from the defendant's person pursuant to a search incident to arrest.

SO STIPULATED:

March 4, 2021
_____
Date

Samika N. Boyd
Jason D. Medinger
Assistant United States Attorneys

3-17-21
_____
Date

Russell Stanley III
The defendant

3|19|21
_____
Date

Andrew I. Alperstein, Esq.
The defendant's Counsel

*United States v. Russell Stanley III*
Criminal No. PX-20-0073

6